# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2017, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amanda O. Blackketter
Blackketter Law, LLC
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian D. Thompson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 9, 2017 <br><br> Court of Appeals Case No. <br> 73A04-1605-CR-1149 <br><br> Appeal from the <br> Shelby Superior Court <br><br> The Honorable <br> David N. Riggins, Judge <br><br> Trial Court Cause No. <br> 73D02-1512-CM-1236 |

**Kirsch, Judge.**

[1] Brian D. Thompson ("Thompson") was convicted following a bench trial of battery resulting in bodily injury,[1] a Class A misdemeanor. Thompson raises the following restated issue on appeal: whether the State presented sufficient evidence to support his conviction.

[2] We affirm.

## Facts and Procedural History

[3] Thompson and his long-time girlfriend, Leslie Jones ("Jones"), were friends with Robert Gearhart ("Robert") and his wife, Donna Gearhart ("Donna"). On the afternoon of December 22, 2015, Jones and a man named James Rogers ("Rogers") went to the Gearharts' home in Shelbyville, Indiana. Once there, Jones and Rogers visited with Robert in his "little man cave," which was a building located on the southwest corner of the property ("the shed"). *Tr.* at 53. A pile of bricks was located outside the shed. Around 2:30 p.m., Thompson arrived at the Gearharts' home unannounced, and Donna, who was in the yard, told Thompson that Robert was in the shed. The events described in the facts below resulted in the State charging Thompson with Count I, Class B misdemeanor battery of Rogers, and Count II, Class A misdemeanor battery resulting in bodily injury of Jones. A bench trial was held on April 21, 2016.

---

[1] *See* Ind. Code § 35-42-2-1.

[4] During the trial, the testimony regarding the events that occurred on the afternoon of December 22, 2015, was wildly inconsistent. Rogers claimed that Thompson was the aggressor that day. Rogers testified that Thompson approached the shed, opened the door, and threw two bricks at Rogers. It was only then that Rogers picked up a baseball bat to keep Thompson away. *Id*. at 9-10. Rogers said that Thompson then returned to his truck and got a fifteen-inch blade machete, but put it away before using it. *Id*. at 10. Rogers also testified that, when Thompson "started coming at [Rogers] again, Leslie Jones got in front of [Rogers] and [Thompson] caught her on the right eye with one heck of . . . [an] open hand slap." *Id*. Rogers called the police and took Jones to the hospital to get treatment for her injury.

[5] Jones testified that she was in the shed with Rogers and Robert when Thompson arrived. Rogers left the shed with a bat, and Thompson and Rogers began to fight. *Id*. at 21. Jones then exited the shed and tried to break up the fight and calm everyone down. *Id*. at 22, 28. Jones explained that she was standing in between Thompson and Rogers, but that she "wasn't like that close in between them." *Id*. at 28-29. Jones testified that Thompson and Rogers were "still throwing words at each other," when Thompson started to argue with Jones. *Id*. at 29. During that argument, Thompson "smacked" Jones. *Id*. at 22. Jones clarified that Thompson did not punch her; instead, he hit her on the face with his open hand. *Id*. When asked if Thompson intentionally slapped her, Jones responded, "I don't really, I really don't know, honestly. I just know we were heated [sic] argu . . . arguments." *Id*. at 30. Rogers

accompanied Jones to the hospital for treatment of the cut on her eye, which she claimed was "irritating and it was hurting." *Id*. at 24.

[6] Thompson testified that he was not the aggressor; instead, it was Rogers who was the aggressor. As such, Thompson argued that he had acted in self-defense. Thompson said that he did not know who was inside the shed and, as he grabbed the handle to the door, Rogers lunged out of the door with a baseball bat and hit Thompson in the ribs. *Id*. at 54. Continuing, Thompson said that Rogers "tried to take [his] head off" with the bat and that he only threw a brick at Rogers "to defend [himself]." *Id*. Thompson testified that he grabbed the bat, threw it to the ground, "shoved [Rogers] to the ground," and then walked away. *Id*. at 55. It was at that time that Jones exited the shed and told Thompson to "leave her friend alone." *Id*. at 56. Defense counsel asked Thompson whether he had heard Jones testify that Thompson "swatted her with an open hand" and "hit her in the face." *Id*. at 57. Thompson made no claim that self-defense played a part in Jones's injury. Instead, Thompson responded, "I heard her say that, yes, and *I do not recall doing that to her. I've never put hands on her* in the past and . . . I would never do that to her." *Id*. (emphasis added). When asked whether he could have come into contact with Jones while the men were "tussling," Thompson responded, "The animosity and the chaos it's a possibility, but I don't recall it." *Id*.

[7] Officer Bryan Cole ("Officer Cole"), with the Shelbyville Police Department, testified that he spoke with Jones at the hospital and that Jones had told him that her face "hurt like hell." *Id*. at 34. Officer Cole testified that he took a

photograph of Jones's injuries, which was introduced into evidence as State's Exhibit 2. *Id*.

[8] Following the presentation of all of the evidence and the arguments by counsel, the trial court found Thompson guilty of Count II, Class A misdemeanor battery resulting in bodily injury of Jones, and not guilty of Count I, Class B misdemeanor battery of Rogers, stating in pertinent part:

> Well, first of all, [Thompson], I find you guilty of count two. I think you touched [Jones] in a rude, insolent, or angry manner and, you know, you stated that, "I don't recall." Well, you would recall that. I think you just don't want to, to remember it. As to count one, I'm befuddled. I don't know what happened. Neither thing makes a lot of sense. [The State's] arguments at the end, they are, are very interesting and I think [the prosecutor] makes good points, but I'm not convinced beyond a reasonable doubt 'cause I don't know what happened, you know? It, it, neither one makes any sense. . . . The problem with count one is neither party's story makes any sense. It doesn't make any sense that Mr. Thompson would suddenly rush, open the door, and start chucking bricks at somebody. . . . It doesn't make any sense for [Rogers] to open the door and rush out with a bat. Neither one makes sense. . . . So, there's a lot of issues there with that. But, so that makes me not convinced beyond a reasonable doubt. But what I am convinced of beyond a reasonable doubt [is] that Mr. Thompson hit [Jones]. There's injuries to her face. She admitted that she was struck. She admitted she went to the hospital which I think is sufficient. So, I find [Thompson] guilty of battery under count two.

*Id.* at 74-76.  The trial court sentenced Thompson to three hundred sixty-five days in the Shelby County Jail, with all time suspended except for four days, two days each of accrued time and credit time.  Thompson now appeals.

## Discussion and Decision

[9]     We begin by noting that Thompson frames his issue as, "Whether the State presented insufficient evidence on the element of intent to support . . . Thompson's conviction for battery resulting in bodily injury, where the unintended victim was struck while Thompson was defending himself from attack by a third party."  *Appellant's Br.* at 4.  Specifically, he contends that this court should "recognize that the doctrine of transferred intent can be applied in a criminal case to exonerate a defendant[, such as Thompson,] who succeeds on his claim of self-defense but injures an unintended third-party victim."  *Id.* at 5.  Thompson claims this is a case of first impression.  *Id.*  The State counters that there is no issue of first impression before us.  *Appellee's Br.* at 7.  We agree with the State.

[10]    Here, the State did not specifically argue at trial that the doctrine of transferred intent applied to the facts of this case, *i.e.*, there is no evidence that Thompson struck Jones while attempting to strike Rogers.  Moreover, Thompson is incorrect in stating that the not guilty finding on Count I reflects the trial court's opinion that Thompson acted in self-defense to protect himself against Rogers.  Rather, the trial court stated that it had trouble believing the testimony of either Rogers or Thompson as to what happened between the two of them, and

therefore, could not be convinced that Thompson was guilty beyond a reasonable doubt of the battery of Rogers. It was on that basis that the trial court found Thompson not guilty of Count I. Accordingly, we need not address Thompson's issue as framed.

[11] Instead we address whether the State presented sufficient evidence to support his conviction for Count II, Class A misdemeanor battery resulting in bodily injury of Jones. When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. *Id*. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id*. "Further, a conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Dalton v. State*, 56 N.E.3d 644, 648 (Ind. Ct. App. 2016) (citing *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012)), *trans. denied*.

[12] To convict Thompson of battery resulting in bodily injury, the State was required to prove beyond a reasonable doubt that Thompson knowingly or intentionally touched Jones in a rude, insolent, or angry manner resulting in bodily injury. Ind. Code § 35-42-2-1(d)(1). "Bodily injury" means "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. Ind. Code § 35-41-2-2(a). A

person engages in conduct "knowingly" if he is aware of a high probability that he is doing so.  Ind. Code § 35-41-2-2(b).

[13]  The evidence and reasonable inferences drawn therefrom that support the verdict show that Jones stepped in between Thompson and Rogers to try to break up their fight and "calm [Thompson] down."  *Tr.* at 10, 28-29.  Jones testified that she was in between them, "but I wasn't like that close in between them," and described Rogers as standing "far apart on the other side of [her]."  *Id*. at 29.  Thompson and Rogers were "still throwing words at each other," when Thompson began to argue with Jones.  During that argument, Thompson "smacked" Jones.  *Id*. at 22.  Jones clarified that Thompson did not punch her; instead, he hit her on the face with his open hand.  *Id*.  As a result of being slapped, Jones had a cut on her eye that was "irritating and it was hurting."  *Id*. at 24.  Rogers took Jones to the hospital to get treatment for her injury, and it was there that Jones described to Officer Cole that her injuries "hurt like hell."  *Id*. at 34.  The pain Jones felt as a result of the slap constituted bodily injury.  *See* Ind. Code § 35-31.5-2-29 (bodily injury includes physical pain).  While Thompson questions whether there was sufficient evidence of his intent, we find the evidence that Jones and Thompson were in a heated argument, *tr*. at 30, and that Jones was not standing in close proximity to Rogers, *id*. at 29, together, allowed the trier of fact to reasonably conclude that Thompson's open-handed slap of Jones's face was intended for Jones, and therefore, Thompson acted knowingly or intelligently.  The evidence presented at trial

was sufficient to support Thompson's conviction for Class A misdemeanor battery resulting in bodily injury of Jones.

[14] Affirmed.

Robb, J., and Barnes, J., concur.